UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - -:

ALBERT SOTO,                               :     15 Civ. 9283 (AJN) (JCF)
                                           :
              Plaintiff,                    :         REPORT AND
                                           :     RECOMMENDATION
     - against -                           :
                                           :
ARMSTRONG REALTY MANAGEMENT CORP.          :
and MARK MASSEY,                           :
                                           :
              Defendants.                  :
- - - - - - - - - - - - - - - - - - - -:

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/21/16

TO THE HONORABLE ALISON J. NATHAN, U.S.D.J.:

The plaintiff, Albert Soto, brings this wage-and-hour action against Armstrong Realty Management Corp. ("Armstrong Realty") and Mark Massey.  After a default judgment was entered against the defendants, the Honorable Alison J. Nathan, U.S.D.J., referred the action to me for an inquest.  The defendants did not appear at the inquest, and the following findings are therefore based on evidence provided by the plaintiff.  For the reasons set forth below, the plaintiff should be granted $141,910.09 in unpaid wages, liquidated damages, and attorneys' fees and costs, and prejudgment interest should also be awarded on the unpaid wage claims at a rate of nine percent per year.

Background

In October 2005, Mr. Soto agreed with Armstrong Realty to work as a porter for $14.50 per hour with a paid lunch break; Mr. Soto never agreed to a pay decrease and persistently reminded Armstrong Realty of the bargained-for wage when they paid him less.

1

(Complaint ("Compl."), ¶¶ 20, 25; Tr. at 4-7).[1]   The plaintiff provided building maintenance services, including mopping hallways and floors, removing debris and garbage, clearing snow, making repairs, and cleaning the lobby and elevators.   (Compl., ¶ 26; Tr. at 10).   He would travel between five different buildings Monday through Friday and would work at the corporate office on Sundays. (Compl., ¶¶ 19, 22; Tr. at 11-13).   The plaintiff ceased working for the defendant in October 2014.   (Compl., ¶ 28; Tr. at 5).

Although his paychecks reflected that he was being paid $14.50 per hour, Mr. Soto was not paid for every hour he worked.   (Tr. at 5-6).   The plaintiff worked six days a week: twice per week, he would typically work from 10:00 a.m. to 8:30 p.m. (Tr. at 8-9), three times per week, he would typically work from 10:00 a.m. to 5:00 p.m. or 6:00 p.m. (Tr. at 9-10), and on Sundays he would usually work from 3:00 p.m. to 8:00 p.m. (Compl., ¶ 21; Tr. at 8). However, he only worked forty-six hours per week, on average.[2] (Compl., ¶ 23; Tr. at 8).   During the relevant dates, Mr. Soto was usually paid $435 per week, and he was paid bi-weekly, except in 2014, when he was paid monthly.   (Exh. 1).[3]   In June and September,

---

[1]   "Tr." refers to the transcript of the inquest.

[2]   At $14.50 per hour, Mr. Soto should thus have been paid $710.50 per week -- forty hours for regular time, and six hours at the overtime rate.

[3]   The plaintiff submitted two damages exhibits -- one during the inquest, and the other in his October 5, 2016 supplemental

he would take a week's vacation.  (Tr. at 31).  Although Mr. Soto

was given a "paid" vacation, he was required to find and pay a

replacement.  (Compl., ¶ 24; Tr. at 18).

The Complaint was filed on November 24, 2015.  Both defendants

were served on December 7, 2015.  (Affidavit of Service on Mark

Massey dated December 10, 2015; Affidavit of Service on Armstrong

Realty Management Corp. dated December 10, 2015).  The plaintiff

requested default against the defendants on March 29, 2016.

(Request to Enter Default dated March 29, 2016).  Judge Nathan

entered default against the defendants on June 1, 2016, and

referred the action to me for inquest.  (Order dated June 1, 2016).

Discussion

 A. Standard

"It is an 'ancient common law axiom' that a defendant who

defaults thereby admits all 'well-pleaded' factual allegations

contained in the complaint."  City of New York v. Mickalis Pawn

Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) (quoting Vermont Teddy

---

submission.  Generally, the charts are substantially the same,
except that the October 5 submission adds interest to claims
covered by the FLSA.  Additionally, the newer submission contains
no amounts in the FLSA damages column, instead placing all the
damages in the NYLL damages column.

However, both charts contain a substantive calculation error.
The plaintiff was paid bi-weekly until 2014, when he was paid
monthly, which neither chart takes fully into account.  Indeed,
they reflect the underpayments in 2014 as being much higher than
they actually were (compare totals for 2013 and 2014).

Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004)).
However, a court is "required to determine whether the
[plaintiff's] allegations establish [the defendant's] liability as
a matter of law." Hood v. Ascent Medical Corp., No. 13 Civ. 628,
2016 WL 1366920, at *15 (S.D.N.Y. March 3, 2016) (alterations in
original) (quoting Mickalis Pawn Shop, 645 F.3d at 137).

"Further, although a 'default judgment entered on well-
pleaded allegations in a complaint establishes a defendant's
liability,' it does not reach the issue of damages." Id.
(citations omitted) (quoting Bambu Sales, Inc. v. Ozak Trading,
Inc., 58 F.3d 849, 854 (2d Cir. 1995)). A plaintiff is therefore
required to prove, with sufficient evidence, his claim for damages
with reasonable certainty. RGI Brands LLC v. Cognac Brisset-
Aurige, S.a.r.l., No. 12 Civ. 1369, 2013 WL 1668206, at *6
(S.D.N.Y. April 18, 2013). "Where, on a damages inquest, a
plaintiff fails to demonstrate its damages to a reasonable
certainty, the court should decline to award any damages, even
though liability has been established through default." Lenard v.
Design Studio, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012).

B.   Liability

The plaintiff's complaint alleges claims for unpaid regular
hours, unpaid overtime, and unpaid vacation time.

1.   Unpaid Hours

The thrust of the plaintiff's first contention is that while

he was paid $14.50 per hour, the defendants paid him for only thirty hours instead of the forty-six that he worked on average. (Compl., ¶¶ 20, 23; Tr. at 8; Exh. 1).[4]  Thus, Mr. Soto seeks to recover pay for ten hours per week of regular time -- also known as "straight time" or "gap time" (as distinguished from "overtime").  The FLSA allows recovery for unpaid "straight" time only up to the minimum wage rate.  Kernes v. Global Structures, LLC, No. 15 Civ. 659, 2016 WL 880199, at *3 (S.D.N.Y. March 1, 2016).  The NYLL provides, on the other hand, for a claim of straight time at a rate higher than the minimum wage if the parties previously agreed to the rate, and courts have awarded straight time rates higher than the minimum wage under a variety of NYLL sections.  See, e.g., id. (NYLL § 198(3)); Armata v. Unique Cleaning Services, LLC, No. 13 CV 3625, 2015 WL 12645527, at *5 (E.D.N.Y. Aug. 27, 2015) (NYLL § 198(3)); Hernandez v. NJK Contractors, Inc., No. 09 CV 4812, 2015 WL 1966355, at *42 (E.D.N.Y. May 1, 2015) (NYLL §§ 191(3), 198(3)); Santillan v. Henoa, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011) (NYLL § 198(3)); Wing Kwong Ho v. Target Construction of NY, Corp., No. 08 CV 4750, 2011 WL 1131510, at *14 (E.D.N.Y. March 28, 2011) (NYLL § 191(1)); Epelbaum v. Nefesh Achath B'Yisrael, Inc., 237 A.D.2d 327, 330, 654 N.Y.S.2d 812, 814 (2d Dep't 1997) (NYLL §§ 191, 198); but see

---

[4]  Unless otherwise indicated, exhibit designations refer to exhibits received at the inquest.

Myers v. Hertz Corp., 624 F.3d 537, 545 n.1 (2d Cir. 2010) ("New York courts have suggested that plaintiffs may not use Labor Law § 191 to seek unpaid wages to which they claim to be entitled under a statute . . . ."); McGlone v. Contract Callers Inc., 114 F. Supp. 3d 172, 173 (S.D.N.Y. 2015) (declining to hold that NYLL § 663(1) allows claims for wage rates higher than minimum wage); Gottlieb v. Kenneth D. Laub & Co., 82 N.Y.2d 457, 464, 605 N.Y.S.2d 213, 217 (1993) ("[A]ll of the remaining provisions of Labor Law § 198 strongly suggest that the entire section was intended merely to afford procedural rules . . . to apply in actions brought for wage claims created under the substantive provisions of Labor Law article 6.").

Here, the plaintiff and the defendants "entered into an oral contract with Corporate Defendant whereby Plaintiff would serve as a porter in various buildings located in New York City, New York and work for the Corporate Defendant in exchange for a specific hourly wage of $14.50 an hour." (Compl., ¶ 20; see also Tr. at 5). The plaintiff's hourly rate never changed, and he worked an average of forty-six hours per week. (Compl., ¶ 23; Tr. at 5, 8). The plaintiff satisfactorily performed services in line with the agreement. (Compl., ¶¶ 26, 53; Tr. at 9-10, 12-17). Thus, the plaintiff should have been paid $580 per week for straight time alone. Yet, the plaintiff was usually only paid $435 per week, and -- at a rate of $14.50 -- was thus only paid for thirty hours

per week.  (Exh. 1).  Therefore, the plaintiff has pled a viable

claim for uncompensated straight time under the NYLL.[5]

    2.   Overtime

To establish an FLSA overtime claim, the plaintiff must show

that: "(1) the defendant is an enterprise participating in commerce

or the production of goods for the purpose of commerce; (2) the

plaintiff is an 'employee' within the meaning of the FLSA; and (3)

the employment relationship is not exempted from the FLSA." Jiaren

Wei v. Lingtou Zhengs Corp., No. 13 CV 5164, 2015 WL 739943, at *5

(E.D.N.Y. Feb. 20, 2005).  According to the FLSA, a defendant is

an "[e]nterprise engaged in commerce or in the production of goods

for commerce" if it

> has employees engaged in commerce or in the production
> of goods for commerce, or that has employees handling,
> selling, or otherwise working on goods or materials that
> have been moved in or produced for commerce by any
> person; and . . . whose annual gross volume of sales
> made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1)(A).  The plaintiff has properly alleged that

he was an employee within the meaning of the FLSA and that

Armstrong Realty is a covered enterprise.  (Compl., ¶¶ 5, 14, 27).

"To recover under the NYLL, plaintiff must prove that he is

an 'employee' and that defendant is an 'employer,' as each term is

defined by the statute."  Coulibaly v. Millennium Super Car Wash,

---

[5]    There is thus no need to determine the viability of the
plaintiff's common law claims.

Inc., No. 12 CV 4760, 2013 WL 6021668, at *7 (E.D.N.Y. Nov. 13, 2013).  "An employee is defined as 'any individual employed or permitted to work by an employer in any occupation . . . .'"  Id. (quoting NYLL § 651(5)).  The plaintiff has properly alleged that he is an employee of the defendants under the NYLL.  (Compl., ¶¶ 5, 22, 29, 37).

Both the FLSA and NYLL provide that a non-exempt employee must be paid one and one-half times their regular rate for hours worked in excess of forty hours per week.  29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2; Coulibaly, 2013 WL 6021668, at *6.  The plaintiff worked six overtime hours per week.  (Compl., ¶ 23; Tr. at 8; Exh. 1).  The plaintiff has established that he was not paid for any hours in excess of forty hours, as he was only paid for thirty hours per week.  (Compl., ¶ 27; Tr. at 8; Exh. 1).  Thus, the plaintiff has a viable overtime claim under the FLSA and the NYLL.

### 3.    Vacation

The complaint states, "Plaintiff received paid vacations, however Plaintiff was instructed by [Mr. Massey] to find, and pay his replacement himself while he was on vacation."  (Compl., ¶ 24).  The following colloquy took place at the inquest:

Q: When you took one week off, were you paid for that week?

A: No.  No.  Yes, I was paid for the week, but I had to pay another guy to take my place.

Q: I see, so it was a condition of your vacation that
you had to find a substitute –

A: Yes.

Q: -- whom you had to pay yourself –

A: I had to pay him out of my pocket.  So really what I
got paid for my vacation went to pay for another guy.
So I really wasn't getting paid for vacation.

Tr. at 17-18.  The plaintiff has not established that he had a

prior agreement with the defendants for paid vacation; rather, he

has shown, at most, an agreement that he would pay a replacement

from the wages he received while on vacation.   Therefore, the

defendants are not liable to the plaintiff for unpaid vacation.

####    4.   Statute of Limitations

The statute of limitations is six years for claims under the

NYLL and three years for claims under the FLSA if a defendant's

acts are willful.  29 U.S.C. § 255(a); NYLL § 663(3); Angamarca v.

Pita Grill 7 Inc., No. 11 Civ. 7777, 2012 WL 3578781, at *4

(S.D.N.Y. Aug. 2, 2012).  The Complaint, filed on November 24,

2015, properly pled willfulness (Compl., ¶¶ 42-49), so the

plaintiff may recover under the FLSA for violations occurring after

November 23, 2012, and under the NYLL for violations occurring

after November 23, 2009.

####    5.   Joint Liability of the Defendants

"To be liable under the FLSA, one must be an 'employer,' which

the statute broadly defines as 'any person acting directly or

indirectly in the interest of an employer in relation to an employee.'" <u>Doo Nam Yang v. ACBL Corp.</u>, 427 F. Supp. 2d 327, 342 (S.D.N.Y. 2005) (quoting 29 U.S.C. § 203(d)).  "The definition of 'employer' is similarly expansive under New York law, encompassing any "'person employing any [employee].'"  <u>Id.</u> (alteration in original) (quoting NYLL § 2(6)).  "The central inquiry in determining whether one qualifies as an 'employer' under these generous definitions is 'whether the alleged employer possessed the power to control the workers in question, . . . with an eye to the "economic reality" presented by the facts of each case.'"  <u>Id.</u> (alteration in original) (quoting <u>Herman v. RSR Security Services Ltd.</u>, 172 F.3d 132, 139 (2d Cir. 1999)).  Factors include "'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records' though no single factor is dispositive."  <u>Id.</u> (quoting <u>Herman</u>, 172 F.3d at 139). The Complaint properly alleges that both defendants were employers of the plaintiff (Compl., ¶¶ 29-37), and thus the defendants are jointly and severally liable.

    C.   <u>Damages</u>

       1.   <u>Unpaid Wages</u>

The plaintiff has shown that from November 24, 2009, to September 27, 2014, he was paid for only thirty hours per week,

10

even though he worked an average of forty-six.  (Tr. at 6, 8; Exh. 1).  Therefore, I recommend that he be awarded ten hours of regular time per week, or $145 per week, and six hours of overtime at one and one half times his rate ($21.75) per week, or $130.50 per week, for a total of $275.50 per week.  The plaintiff was underpaid for 243 weeks[6] and is thus owed $66,946.50 in unpaid wages.

### 2.   Liquidated Damages

Although the FLSA provides for liquidated damages for unpaid overtime, see 29 U.S.C. § 216(b), the plaintiff requests liquidated damages solely under the NYLL (Exh. 1 (Oct. 5, 2016)).  Under the NYLL, an employee may recover 25% liquidated damages for any NYLL wage claim accruing on or before April 8, 2011, and 100% liquidated damages thereafter, "unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law."  Xochimitl v. Pita Grill of Hell's Kitchen, Inc., No. 14 Civ. 10234, 2016 WL 4704917, at *15 (S.D.N.Y. Sept. 8, 2016) (quoting NYLL § 198(1-a)); see Berrezueta v. Royal Crown Pastry Shop, Inc., No. 12 CV 4380, 2013 WL 6579799, at *5 (E.D.N.Y. Dec. 16, 2013).  A defaulting defendant cannot make a showing of good faith.  Xochimitl, 2016 WL 4704917, at *18; Berrezueta, 2013 WL 6579799, at *5.  For sixty-nine weeks (for paydays from November

---

[6]   The relevant period is 253 weeks.  (Exh. 1).  However, the plaintiff took two weeks' vacation per year (Tr. at 31), and thus worked a total of 243 weeks.

28, 2009, to April 2, 2011, excluding unpaid vacation weeks), liquidated damages are twenty-five percent.  For the remaining 174 weeks, liquidated damages are 100%.  Thus, I recommend awarding liquidated damages in the amount of $52,689.38.[7]

### 3.   Interest

The  plaintiff  may  be  awarded  interest  in  addition  to liquidated  damages  for  NYLL  claims.    See  Xochimitl,  2016  WL 4704917, at *18; Berrezueta, 2013 WL 6579799, at *6.  When damages accrue over a period of time, interest may be "computed upon each item from the date it was incurred or upon all of the damages from a  single  reasonable  intermediate  date."    NYCPLR  §  5001(b); Hernandez, 2013 WL 5129815, at *7.   The statutory rate is nine percent per year.  NYCPLR § 5004; Hernandez, 2013 WL 5129815, at *7.  "Simple prejudgment interest is calculated by multiplying the principal  by  the  interest  rate  by  the  time  period  --  from  a singular, midpoint date -- up until and including the date judgment is entered."  Maldonado v. La Nueva Rampa, Inc., No. 10 Civ. 8195, 2012 WL 1669341, at *11 (S.D.N.Y. May 14, 2012).   The middle pay period for the relevant dates is April 28, 2012, and the principal is $66,946.50.   Interest accrues at $16.50 per day.[8]   Thus, on

---

[7]  (69 weeks x $275.50 x 0.25) + (174 weeks x $275.50).
[8]  (0.0002465 (daily interest rate) x $66,946.50).

January 7, 2017, the total prejudgment interest will be
$28,297.50.[9]

    D.    <u>Attorneys' Fees and Costs</u>

The FLSA and the NYLL provide for an award of reasonable
attorneys' fees and costs to a prevailing plaintiff in a wage-and-
hour action.  29 U.S.C. § 216(b); NYLL § 198.  "Courts ordinarily
award a lodestar fee, which is the product of the prevailing market
rate for lawyers in the district and the number of hours a
reasonable attorney would spend to litigate the case effectively."
<u>Tackie v. Keff Enterprises LLC</u>, No. 14 Civ. 2074, 2014 WL 4626229,
at *6 (S.D.N.Y. Sept. 16, 2014).  "The plaintiff must produce
'contemporaneous time records indicating, for each attorney, the
date, the hours expended, and the nature of the work done.'"  <u>Id.</u>
(quoting <u>Scott v. City of New York</u>, 626 F.3d 130, 133–34 (2d Cir.
2010)).

The plaintiff seeks a rate of $450 per hour for attorney
Robert Wisniewski -- the lead attorney and primary timekeeper --
and $125 for paralegal work.  (Declaration of Robert Wisniewski
dated Oct. 5, 2016 ("Wisniewski Decl."), ¶ 8).  Mr. Wisniewski is
an experienced litigator (Wisniewski Decl., ¶¶ 4-7), and $450 per
hour is a reasonable rate in this case, <u>see Gonzalez v.
Scalinatella, Inc.</u>, 112 F. Supp. 3d 5, 28 (S.D.N.Y. 2015).  Norma

---

    [9]  (1,715 days x $16.50).

Lopez, a paralegal, and Dorothy Jankowska, a legal assistant --
are likewise experienced, and I recommend that they be awarded
$125 per hour.  See Siegel v. Bloomberg L.P., No. 13 Civ. 1351,
2016 WL 1211849, at *7 ($125.00 per hour); Mills v. Capital One,
North America, No. 14 Civ. 1937, 2015 WL 5730008, at *12 (S.D.N.Y.
Sept. 30, 2015) ($125.00 per hour); Guardado v. Precision
Financial, Inc., No. 04 CV 3309, 2008 WL 822105, at *6 (E.D.N.Y.
March 25, 2008) (applying paralegal rate for administrative
assistant who performed paralegal work).  The hours expended --
64.84 -- are not unreasonable and are recorded in substantial
detail (Timesheets, attached as Exh. 2 to Wisniewski Decl.;
Supplemental Timesheets, attached as Exh. 3 to Wisniewski Decl.),
and thus I recommend awarding $21,085.50, the full amount
requested.

A successful plaintiff in a wage-and-hour action is entitled
to recover certain costs.  Jimenez v. KLB Foods, Inc., No. 12 Civ.
6796, 2015 WL 3947273, at *4 (S.D.N.Y. June 29, 2015).  Here, the
costs for mailing, court reporting, filing fees, copies, witness
fees, and service, which total $1,188.71, are reasonable.  See
Siegel, 2016 WL 1211849, at *15 (fees for service reasonable);
Reiseck v. Universal Communications of Miami, Inc., No. 06 Civ.
777, 2014 WL 5374684, at *8 (S.D.N.Y. Sept. 4, 2014) (expenses for
travel, mailing, copies, witness fees, and court reporting

14

acceptable).   Total fees and costs of $22,274.21 should therefore be awarded.   (Timesheets; Supplemental Timesheets).

Conclusion

I recommend entering judgment against the defendants joinitly and severally and awarding the plaintiff $66,946.50 in unpaid wages, $52,689.38 in liquidated damages, and $22,274.21 in costs and fees.   I also recommend awarding prejudgment interest of $28,297.50 on the unpaid wages, plus $16.50 for every day after January 7, 2017.   Pursuant to 28 U.S.C. § 636 (b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation.   Such objection shall be filed with the Clerk of the Court, with extra copies delivered to the Chambers of the Honorable Alison J. Nathan, Room 2102, 40 Foley Square, New York, New York 10007, and to the Chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007.   Failure to file timely objections will preclude appellate review.


Respectfully submitted,


JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:   New York, New York
December 21, 2016

Copies transmitted this date to:

Robert Wisniewski, Esq.
Robert Wisniewski & Associates P.C.
225 Broadway
Suite 1020
New York, NY 10007

Mark Massey
Armstrong Realty Management Corp.
148 East 46th Street
Suite 2
New York, NY 10017